21779

The STATE, Respondent, V. Frances Ann PRICE, Appellant.
(294 S. E. (2d) 426)

*Deputy Appellate Defender David W. Carpenter*, of *S. C. Com'n of Appellate Defense*, Columbia, *for appellant*.

*Atty. Gen. Daniel R. McLeod* and *Asst. Attys. Gen. Harold M. Coombs, Jr.*, and *Preston F. McDaniel*, Columbia, and *Sol. Claude A. Taylor, Jr.*, Spartanburg, *for respondent*.

Aug. 23, 1982.

NESS, Justice:

Appellant was convicted by a jury of accessory after the fact of murder, and sentenced to nine years' imprisonment. She alleges the trial court made several errors requiring a reversal of her conviction. We disagree and affirm.

On September 6, 1980, around midnight, police officers found the body of eight year old Tracie Ann Whiteside in a plastic bag in the attic of appellant's vacant house in Una, South Carolina. Appellant, her husband, and her two boys, Jeffrey age 11 and Randy age 12, lived in a house on the adjoining lot. Appellant's brother and sister-in-law, the par-

ents of the victim, lived with their two children in the adjacent house on the other side of appellant.

Appellant's two sons testified that they had been playing with the victim in the vacant house when Randy and the victim began to argue. The victim hit Randy's head with a bottle. Randy testified that he thereafter smelled an alcohol odor, placed his hands on the victim's neck and then lost control of his body. When he removed his hands from the victim's neck, she did not move. He returned home and told appellant about the incident. She accompanied the two boys to the vacant house, helped place the victim's body in a plastic garbage bag and then in a box and subsequently carried it to the attic. Thereafter, she and her two sons went to a movie.

Appellant denied that her sons had told her of the victim's death and that she had helped them conceal the body. In addition, appellant asserts that Randy was unconscious when he killed the victim; therefore, no felony had been committed to which appellant could be an accessory.

During trial, appellant's counsel made an offer of proof as to the testimony of a potential defense witness. Over the State's objection, defense counsel sought to have the psychiatrist, who examined Randy at the South Carolina State Hospital after the incident testify:

> "... that at the time Randy Price strangled this girl it was committed during the process or the progress of a temporal lobe epileptic seizure during which time Randy Price was unconscious. It was during the postitcal, i-t-c-a-l, stage of that seizure and this witness will relate in court that a person in the postitcal stage of a frontal lobe seizure has no capacity to do anything voluntary or to do anything."

The State objected "... that if appellant was able to avail herself of the principal's defenses, then that in itself would be an obstruction of justice." Citing *State v. Massey,* 267 S. C. 432, 229 S. E. (2d) 332 (1976), the trial judge refused to allow the defense witness to testify. We agree.

It is easy to conceive of a case in which the person who actually committed a homicide could not or might not be convicted by reason of incapacity or some other valid defense, but where the person who procured the commission of the crime and/or, the accessory's culpability is clear.

"There is a variety of reasons why a jury trying only a principal might fail to convict the principal,... To permit a guilty accessory to interpose the fact of the principal's acquittal as a bar to his own trial is a rule which would effectively constitute an obstruction of justice." *State v. Massey*, supra, 267 S. C. at 446, 229 S. E. (2d) 332.

We cannot accept a doctrine which could exempt a perpetrator from any punishment.

The principal felon, Randy Price, was permitted to testify fully as to the facts surrounding his homicide of the victim and it was further *stipulated* by the State that he may be suffering from epilepsy. The requirement that the jury in the trial of the accessory must find as a fact the principal did actually commit the crime involved is still the rule. The question of Randy's capacity to commit a criminal act at the time of the homicide was before the jury. "This rule affords the accused accessory the necessary degree of protection." *State v. Massey*, supra, 267 S. C. at 446, 229 S. E. (2d) 332.

The testimony of the psychiatrist as to Randy Price's capacity at the time of the homicide could only be based on a hypothetical question,[1] which could be cumulative on the issue and was properly excluded. In any event the issue of the capacity of Randy Price would only relate to his intent. Moreover, following the testimony of Randy Price the trial court read into the record a stipulation of the parties that the State would recommend in the family court that Randy be allowed to enter a plea to manslaughter. (Tr. p. 531, f. 16).

The trial court has broad discretion in the admission of evidence, *State v. Gregory*, 198 S. C. 98, 16 S. E. (2d) 532 (1941), and this along with the stipulation of the parties was sufficient to authorize the trial court to refuse to permit the psychiatrist to testify to a hypothetical set of facts. *State v. McDowell*, 272 S. C. 203, 249 S. E. (2d) 916 (1978); *State v. Lee, et al.*, 203 S. C. 536, 28 S. E. (2d) 402 (1943); 149 ALR 1300.

We further hold the defense of Randy's incapacity is not available to appellant, under the facts of this case, as he testified the victim hit him after an argument,

---

[1] We held in *State v. Hyde*, 90 S. C. 296, 73 S. E. 180 (1912) that where partial or temporary incompetency is asserted, medical experts who had not examined the defendant at the time of the offense cannot testify as to his mental capacity at that time but may testify only to hypothetical questions.

(Tr. 490, f. 23) and that he was angry with the victim. (Tr. 501, f. 6). This Court held in *State v. Coyle*, 86 S. C. 81, 67 S. E. 24 (1910):

> " 'Insanity' arising during the progress of a difficulty voluntarily brought on by defendant, and as the result of a blow rightfully inflicted by his adversary, should not constitute excuse for his after conduct in such difficulty."

Here Randy was already arguing with and angry with the victim. The unconsciousness brought on by the blow to his head during the argument does not constitute a defense to his crime, it only relates to the degree of culpability. The evidence of the psychiatrist was properly excluded.

Appellant next challenges the charge of the trial court where the court charged:

> "When you have weighed all of testimony produced by the State and on behalf of the Defendant, Frances Price, and then have applied the law as I charged it to you you are convinced beyond a reasonable doubt that the Defendant knew *Randy Price had murdered Tracie Whiteside or caused her death* and knowing these facts she sheltered, gave aid or in some way assisted Randy Price, it will be your duty to find the Defendant, Frances Price, guilty of being an accessory after the fact ..." (Emphasis added).

She asserts this misled the jury. However, the court properly instructed the jury in accordance with *State v. Nicholson, et al.*, 221 S. C. 399, 70 S. E. (2d) 632 (1952) in charging the State must establish beyond a reasonable doubt that Tracie Whiteside had been murdered and the defendant Frances Price had knowledge that Randy Price had committed the murder. Considering the charge as a whole we find no error. We overrule this exception and affirm.

Affirmed.

LEWIS, C.J., and LITTLEJOHN and GREGORY, JJ., concur.

HARWELL, J., dissents.

HARWELL, Justice (dissenting):

Disagreeing with my brethren's opinion, I would reverse and remand for a new trial.

The alleged principal felon, appellant's son Randy, had been negotiating with the State to plead guilty to manslaughter since he contended the accidental killing occurred while he was having an epileptic seizure. Appellant was indicted for and subsequently convicted of accessory after the fact of *murder*. She attempted to prove the killing was not murder and therefore she could not be guilty of the crime with which she was charged. The majority of the Court concludes that appellant was not prejudiced by the trial court's refusal to admit the psychiatrist's testimony because his testimony to a hypothetical set of facts would merely be cumulative to the State's stipulation that Randy may have been suffering from epilepsy. I disagree. Laymen, aware of the plea bargaining process and of its connotations, see discussion in *Medlin v. State*, 276 S. C. 540, 280 S. E. (2d) 648 (1981), may not be persuaded of an accused's innocence of murder by the State's acceptance of a twelve year old boy's guilty plea to manslaughter. I can only speculate concerning the jury impact of the testimony of a state psychiatrist who personally examined Randy after the incident. I believe the appellant should have been allowed to introduce the psychiatrist's testimony.

The trial judge cited *State v. Massey*, 267 S. C. 432, 229 S. E. (2d) 332 (1976), as his reason for refusing the testimony. I disagree with the court's interpretation of Massey. The elements of the crime of accessory after the fact are stated in *State v. Nicholson*, 221 S. C. 399, 70 S. E. (2d) 632, 634 (1952):

> An accessory after the fact is one who, knowing a felony to have been committed receives, relieves, comforts, or assists the felon . . . Three conditions must unite to render one an accessory after the fact: (1) *The felony must be complete.* (2) The accessory must have knowledge that the principal committed the felony. (3) The accessory must harbor or assist the principal felon . . . . (Emphasis added).

By raising a reasonable doubt concerning any one of these three elements, an accused can successfully defend against the charge of accessory after the fact.

In *State v. Burbage*, 51 S. C. 284, 28 S. E. 937 (1898) this Court stated that the principal felon need not be *convicted* in order to indict, convict, and punish the accessory after the fact. See also, S. C. Code Ann. § 17-21-60 (1976). However, we clarified that statement in *State v. Massey*, supra.

> That the jury in the trial of the accessory must find as a fact that the principal did actually commit the crime involved is a rule that remains as valid and unchanged as before .... This rule affords the accused accessory the necessary degree of protection.

Although the majority ostensibly concedes that *Massey* requires the jury to find that Randy actually murdered the victim, nevertheless, in effect, it ignores the *Massey* requirement. Before appellant could be convicted of accessory after the fact of murder, I would require that the State prove a murder. Likewise, the defendant should then be provided the opportunity to negate the fact of murder since murder is an element of the crime with which she is charged. In *State v. Lyle*, 125 S. C. 406, 118 S. E. 803, 814 (1923), this Court held that a trial court has no discretionary power to exclude competent evidence that is not merely cumulative and offered to prove a material element of a party's defense. "And where there is serious doubt as to the admissibility of evidence, the doubt should always be resolved in defendant's favor." 118 S. E. at 814. Therefore, I believe the trial court committed prejudicial error in excluding the psychiatrist's testimony.

This Court has never addressed the defense of unconsciousness. However, the weight of authority recognizes that a person cannot be held criminally responsible for acts committed while he or she is unconscious. 22 C. J. S. Criminal Law § 55 (1961). The North Carolina Supreme Court recognizes unconsciousness as a complete defense to a criminal charge. *State v. Caddell*, 287 N. C. 266, 215 S. E. (2d) 348 (1975). I would hold that unconsciousness is a defense to a criminal charge under the law of this State. The majority holds that Randy's epileptic state would not be a valid defense to murder because "'insanity'... voluntarily brought on by defendant should not constitute excuse for his after conduct..." *State v. Coyle*, cited by the majority as authority for that analysis, is not dispositive of the facts before us. Although Randy and the victim

were involved in a childish altercation when the victim struck him on the head, his resulting epileptic seizure cannot be compared to temporary insanity elicited by the passions of an argument. *Coyle* addressed the latter situation. In addition, the majority states Randy's capacity to commit murder merely relates to the degree of culpability and to his intent. Intent, however, is the heart of murder, defined as "the killing of any person with malice aforethought, either express or implied." S. C. Code Ann. § 16-3-10 (1976). Malice consists "of the *intentional* doing of a wrongful act toward another without legal justification or excuse." (Emphasis added). *State v. Heyward*, 197 S. C. 371, 375, 15 S. E. (2d) 669, 671 (1941). Therefore, I believe the majority errs by dismissing the principal felon's unconscious state as merely relating to his intent.

During cross-examination appellant's counsel asked the alleged principal felon, "Did you have a seizure?" The trial court sustained the State's objection that the witness was not a doctor and stated that the question was "self-serving." Appellant's counsel was obviously having a hard time communicating with the twelve-year old witness; when he asked the young witness if he knew what "conscious" meant, he nodded negatively. However, when he asked the witness if he knew what "seizure" meant, he responded affirmatively. I believe that under the circumstances, appellant's counsel should have been allowed to cross-examine Randy about whether he had suffered a seizure at the time he apparently killed the deceased. The right of cross-examination is implicit in the constitutional right of confrontation and helps assure the accuracy of the truth-determining process. *Chambers v. Mississippi*, 410 U. S. 284, 93 S. Ct. 1038, 35 L. Ed. (2d) 297 (1973). The cross-examiner is permitted to delve into the witness' story to test the witness' perceptions and memory. *David v. Alaska*, 415 U. S. 308, 94 S. Ct. 1105, 39 L. Ed. (2d) 347 (1974). By limiting appellant's cross-examination of the State's primary witness, the trial court prevented appellant from asserting her defense that there had been no murder.

Finally, appellant asserts the following jury charge was misleading:

> When you have weighed all of the testimony produced by the State and on behalf of the Defendant, Frances Price, and then have applied the law as I charged it to you you

are convinced beyond a reasonable doubt that the Defendant knew *Randy Price had murdered Tracie Whiteside or caused her death* and knowing these facts she sheltered, gave aid or in some way assisted Randy Price, it will be your duty to find the Defendant, Frances Price, guilty of being an accessory after the fact.... (Emphasis added).

An accessory after the fact of murder must have knowledge that the principal committed a murder, not merely that the principal caused the death. It was uncontested that Randy had caused the victim's death. I agree that the charge was misleading.

Accordingly, I would reverse appellant's conviction and remand for a new trial.