Steven MONTEZ, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4796.

Supreme Court of Wyoming.

Dec. 30, 1977.

King Tristani, Asst. Public Defender, Laramie County, Cheyenne, signed the brief and appeared in oral argument on behalf of appellant.

V. Frank Mendicino, Atty. Gen., and Jim E. Gusea, Asst. Atty. Gen., Cheyenne, signed the brief and Jim E. Gusea appeared in oral argument on behalf of appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

Appellant-defendant was found guilty by a jury in the district court of burglary and battery upon a person lawfully in the burglarized enclosure, in violation of § 6–129(B)(4), W.S.1957, and sentenced to a penitentiary term of not less than three years nor more than seven years. On appeal, defendant raises three issues:

1. Whether the trial court erred in refusing to allow the defendant to call the assistant county attorney as a witness;
2. Whether the trial court erred in refusing to charge the jury with the defendant's proffered eyewitness identification instruction;
3. Whether the trial court erred in refusing to vacate the second sentence imposed on the defendant.

We shall affirm.

Sometime between 10:30 p.m. and 11:30 p.m. in the evening of September 26, 1976, Mary Hinton heard the sound of glass breaking in the back of her house. After telling her son to seek help at her sister's house about two blocks away, she walked down the hallway to her bedroom where she encountered a man trying to remove her daughter's bicycle through the bedroom window and hand it to another man stationed outside.

As soon as Mrs. Hinton stepped into the bedroom, the burglar turned and assaulted her. He grabbed the front of her blouse, tearing it as a result, then grabbed her left arm and spun her around. He then inflicted several cuts on her face, arms and back with a shiny piece of metal approximately three or four inches long. After Mrs. Hinton fell to the floor, the burglar cut her again, and then departed the house.

The assault lasted approximately four minutes during which time Mrs. Hinton was able to see her assailant's face two or three times. Although there was no light in the bedroom itself, the room was illuminated by a mercury vapor lamp outside the window with sufficient intensity to enable a person in the room to discern colors. Mrs. Hinton identified the burglar-assailant as the defendant. While she had never been formally introduced to defendant, Mrs. Hinton testified to having seen him in the neighborhood once or twice a day since May of 1976, and had heard him referred to as Steve or Montez.

At trial, the defendant relied on the testimony of two alibi witnesses as his sole defense. His sister testified that the defendant and his girlfriend had been at her house for dinner on the evening in question and that she and her husband had driven the couple home, dropping them off at approximately 12:30 a.m. This alibi testimony was corroborated by defendant's girlfriend.

Immediately following the jury's return, on January 19, 1977, of a verdict of guilty to the crime charged, the trial judge handed down a sentence from the bench wherein the defendant was sentenced to a prison term of "not less than five years nor more than seven years and that three years of that sentence be suspended from the top time". Immediately following adjournment, the trial judge indicated to counsel in chambers his concern that the defendant was under the influence of something during the sentencing, and if this were true, additional time was necessary to get him in a position where he was able to comprehend, able to function a little better before the court. The trial judge then stated there would be a continuance of the sentencing proceeding.

The sentencing proceeding was continued on January 26, 1977, the trial judge's suspicions being confirmed by a medical report submitted to the court as well as the defendant's own statement that he had taken more of the valium prescribed for him than he should have. The trial judge responded that it was not his intent to punish the defendant because of his suspicions about defendant's condition but rather that his primary concern at the original sentencing was the defendant's ability to comprehend the nature and the consequences of a term of "not less than three (3) years, nor more than seven years" and this was the sentence entered. This appeal followed.

On cross-examination by the State, defendant's sister stated that she first realized defendant could not have committed the crime charged when she heard Mrs. Hinton's testimony at the preliminary hearing. The prosecution then elicited testimony from her to the effect that she had not informed the sheriff's office, the trial judge, or any police of this alibi prior to

trial. Following cross-examination, counsel for defendant attempted to call the assistant county attorney as an adverse witness. An offer of proof was made out of the presence of the jury, attempting to show that even if the witness had in effect attempted to contact the county attorney's office regarding defendant's alibi, no further follow-up by that office would have been made. The trial court refused to allow the assistant county attorney to testify, and we agree.

Although, as a general rule, an attorney is not disqualified as a competent witness merely because of his participation in a trial, either as prosecutor or counsel for the defense, courts have been extremely reluctant to allow lawyers, including prosecuting attorneys, to be called as witnesses in trials in which they are advocates. Annotation, "Prosecuting Attorney as a Witness in Criminal Case", 54 A.L.R.3d 100 (1973). As stated in *Johnson v. State*, 1922, 29 Wyo. 121, 211 P. 484, 487, "[T]he practice of county attorneys testifying in criminal cases should be the exception, and not the rule,". And as reflected by a vast weight of authority, any decision whether or not to allow an attorney to be called is left to the discretion of the trial judge. *Gajewski v. United States*, 8 Cir. 1963, 321 F.2d 261, cert. den. 375 U.S. 968, 84 S.Ct. 486, 11 L.Ed.2d 416; *Fisher v. United States*, 9 Cir. 1956, 231 F.2d 99; *United States v. Maloney*, U.S.D.C., W.D.Pa. 1965, 241 F.Supp. 49; *People v. Gendron*, 1968, 41 Ill.2d 351, 243 N.E.2d 208, cert. den. 396 U.S. 889, 90 S.Ct. 179, 24 L.Ed.2d 164, *State v. Stiltner*, 1962, 61 Wash.2d 102, 377 P.2d 252, cert. den. 380 U.S. 924, 85 S.Ct. 928, 13 L.Ed.2d 810.

Once the decision has been made, the standard on appeal against which to measure the trial judge's exercise of discretion has been articulated in several ways. In *United States v. Maloney*, supra, the court described the standard this way, 241 F.Supp. at 50:

"The circumstances under which a Court will allow an attorney for a party, even a prosecuting attorney, to take the witness stand must be such that a compelling reason for such a move, contrary to the usual well-ordered rules for the conduct of a trial, are present. The Court may, without an abuse of discretion, refuse to allow the defense to call the prosecuting attorney as a witness on its behalf. *Gajewski v. United States*, 321 F.2d 261 (8th Cir. 1963); [Citing case.]"

In *Gajewski v. United States*, supra, the court also discussed what effect a defendant's right to call witnesses has on the question of calling the prosecuting attorney, 321 F.2d at 268–269:

"To be sure, an accused's right to call relevant witnesses and to present a complete defense may not be abrogated for the sake of trial convenience or for the purpose of protecting a United States Attorney from possible embarrassment while testifying; *if he possesses information vital to the defense.* * * *"
[Emphasis added.]

And, finally, in *State v. Stiltner*, supra, the court stated, 377 P.2d at 253–254:

" * * * Although neither counsel is rendered incompetent as a witness because of his participation in the trial, the right of one to call the other is not exactly a 'two-way street' in view of defendant's constitutional rights. This does not mean, however, that defense counsel has an uncontrolled right to call the trial prosecutor to the stand.

* * * * * *

"The defendant in a criminal trial has the right to prove his defense in the best manner available to him; the trial prosecutor is a competent witness; his testimony must be relevant and material to the theory of the defense; it must not be privileged, repetitious, or cumulative. See *State v. Lee,* 203 S.C. 536, 28 S.E.2d 402, 149 A.L.R. 1300 (1943) and annotation, 'Competency of prosecuting attorney as a witness.' 149 A.L.R. 1305. All this lies in the broad discretionary right of the trial judge to control the trial of the case."

See also *Johnson v. State*, 1974, 23 Md.App. 131, 326 A.2d 38, aff'd. 275 Md. 291, 339

A.2d 289; *People v. Nelson,* 1967, 89 Ill. App.2d 84, 233 N.E.2d 64; *People v. Boford,* 1953, 117 Cal.App.2d 576, 256 P.2d 334; *State v. Lee,* 1943, 203 S.C. 536, 28 S.E.2d 402, 149 A.L.R. 1300.

Applying these standards to the situation presented at bar, we can find no abuse of the trial judge's discretion in denial of defendant's request to call as an adverse witness the assistant county attorney. While we agree that a defendant has a right to call relevant witnesses and present a complete defense, we fail to see how the rejected testimony here is vital to the defense. The sole apparent purpose behind the defense's request was rehabilitation of defendant's alibi witness, not establishment of a new defense theory or fulfillment of a vital blank in a present theory.

■ Besides that, the witness would have been asked to speculate as to what he would have done under circumstances that had not, in fact, existed. In the offer of proof that was made, counsel said, "I don't know what his answer might be", "I would imagine his answer might be vague." A defendant has the burden to show that the evidence he offers to produce is relevant. The suggestion of a possibility that the

offered evidence might reflect something relevant does not satisfy that burden. *Wilson v. Wilson,* Wyo.1970, 473 P.2d 595. An offer of proof must be explicit. *State Highway Commission of Wyoming v. Joe Miller Land Company,* Wyo.1970, 467 P.2d 450; *State v. Nystedt,* 1963, 79 Nev. 24, 377 P.2d 929. There must be a showing of what the answer would have been. *State v. Collins,* 1946, 162 Kan. 34, 174 P.2d 126. The defendant did not know what the prosecutor's answer would have been, thus basing any claim of error on sheer speculation. Under these circumstances, and particularly in light of the appropriate judicial reluctance to allow advocating attorneys to testify, we can find no judicial abuse of discretion by the trial court here. Denial of defendant's request to have the assistant county attorney testify as an adverse witness was proper.

■ Defendant has assigned as error the fact that the trial court refused to give his offered instruction relating to eyewitness identification.[1] Yet the record on appeal contains merely defendant's bare request for such an instruction without any authority stated in support thereof, nor a distinct

1. The refused instruction read as follows:
"Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.
"Identification testimony should be considered with great caution and no class of testimony is more uncertain and less to be relied on then [sic] that as to identity.
"In appraising the identification testimony of a witness you should consider the following:
"1. Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?
"Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short of time was available, how far or close the witness was, how good were lighting conditions, where the witness had an occasion to see or know the person in the past.
"2. Are you satisfied that the identification made by the witness subsequent to the offense was a product of her own recollection?
"You may take into account both the strength of the identification, and the circumstances under which the identification was made.

"If the identification by the witness may have been influenced by the circumstances under which defendant was presented to her for identification, you should scrutinize the identification with great care. You may also consider the length of time that elapsed between the occurrence of the crime and the next opportunity of the witness to see the defendant, as a factor bearing on the reliability of the identification.
"3. Finally, you must consider the credability [sic] of the identification witness in the same way as any other witness, consider whether she is truthful, and consider whether she had the capacity and opportunity to make a reliable observation of the matter covered in her testimony.
"I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proof and beyond a reasonable doubt the identity of the defendant as a perpetrator of the crime with which he stands charged. If after examining the testimony you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty."

objection to the court's failure to so instruct.[2] It is well-settled law in Wyoming, often repeated, that this court will not consider the propriety of a grant or refusal of instructions unless there is a specific, distinct objection made at trial. *Haley v. Dreesen*, Wyo.1975, 532 P.2d 399; *Hurst v. State*, Wyo.1974, 519 P.2d 971. "The voicing of general objections is tantamount to no objection at all." *Heberling v. State*, Wyo.1973, 507 P.2d 1, 5, cert. den. 414 U.S. 1022, 94 S.Ct. 444, 38 L.Ed.2d 313. Without these required specific objections, a trial judge is not informed of possible errors and is therefore precluded the opportunity to correct them. *Haley v. Dreesen*, supra. Under the circumstances of this case, it is obvious that defendant's objection was not sufficiently specific and our review of the record on the question reveals no plain error[3] which would obviate the need for proper objection. *Hays v. State*, Wyo.1974, 522 P.2d 1004. Under such a conclusion, plus the fact that the theory of the refused instruction appears well covered by the others given, *Benson v. State*, Wyo.1977, 571 P.2d 595 it is clear that the trial court's refusal was not error.

 As indicated, the defendant twice faced the trial court for sentencing, once immediately following return of the jury verdict on January 19, 1977, and again on January 26, 1977. Both below and here on appeal, defendant has asserted that the second sentence imposed must be vacated, apparently upon the grounds that this latter sentence was an impermissible increase over the first. We think not. Any person imprisoned in any institution under sentence ordered by any Wyoming district court, except in the situation of a life sentence, is eligible for parole upon serving the minimum term pronounced by that court. Section 7–325(a), W.S.1957, 1975 Cum. Supp.[4] In the situation here, the latter sentence imposed, "not less than three years nor more than seven years", was, in effect, a reduction from that imposed from the bench on January 19, "not less than five years nor more than seven, with three years suspended from top time", since defendant is now eligible for parole in three years rather than four, the minimum term having been reduced. Such a reduction is clearly within the power of the district court. Rule 36, W.R.Cr.P.

Further, the record clearly indicates that the trial judge intended the first proceeding for sentencing to be continued based on a suspicion that the defendant was unable to comprehend the nature of what was occurring. He then ordered that defendant be medically examined, and when such examination confirmed his original suspicions, the

---

**2.** Defense counsel's "objection" stated:

"I have no objection to the instruction as submitted by the court, other than the fact that I wish to add an instruction on eyewitness identification, the original of which has been deposited in the file and labeled not given or refused, and reads as follows: [at which point the instruction was read into the record.]"

No objection was made to refusal of the court to give the instruction. Rule 51, W.R.C.P., is adopted by reference in Rule 31. W.R.Cr.P. Rule 51 provides that, " * * * No party may assign as error the giving *or failure to give* an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds for his objection. * * * " (Em-

phasis added.) See *Garcia v. State*, Wyo.1977, 571 P.2d 606, and *Bentley v. State*, Wyo.1972, 502 P.2d 203, 206.

**3.** We do not by this observation indicate any approval whatsoever of the tendered instruction.

**4.** Section 7–325(a), in pertinent part, provides:

"(a) The board shall have the power to grant a parole, that is, he may be permitted to leave the confines of the institution in which he is confined, to any person imprisoned in any institution under sentence ordered by any district court of this state, other than a life sentence, and who shall have served the minimum term pronounced by the trial court; * * *."

 

later sentencing proceeding was held. Such a procedure would appear not only appropriate, but may well have been required. Rules 33(a)(1) and 42, W.R.Cr.P.

Finally, as further evidence of the trial judge's intent that the first sentencing be continued, only the second sentence imposed was entered with the clerk. With this state of affairs there was no prejudice to the defendant.

Affirmed.